# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HAMPTON-MERIDIAN GROUP, )
INC., )
 )
      Plaintiff, )
 )
      vs. )    2:07cv1176
 )    **Electronic Filing**
GEORGE VENTURELLA, )
GV DESIGNER HOMES, LTD., )
STEVE PARMEE, STANDARD )
PROPERTY DEVELOPMENT, LLC., )
 )
 )
      Defendants. )

## OPINION

    Plaintiff commenced this diversity action seeking to recover damages arising from defendants' alleged breach of contract. Presently before the court is Defendants' motion to dismiss or alternatively to transfer to the Middle District of Florida. For the reasons set forth below, the motion will be granted in part and the action will be transferred to the Middle District of Florida pursuant to 28 U.S.C. §1406(a).

    Plaintiff is a Pennsylvania limited liability company in the business of obtaining financing and investment capital for individuals and businesses. Plaintiff does not provide direct financing to its clients, but rather uses its relations with various financial institutions to connect its clients to lenders. Defendants are the owners of real property in Orlando, Florida who intended to convert an existing hotel into a 161 unit luxury "condotel." Defendants Venturella and Parmee were to control the construction and operation the conversion project. The project was partially financed - $18, 750,000 - through a construction loan from USA Capital. After advancing $8.4 million on the loan, USA Capital filed for bankruptcy protection and refused to make any additional advances. By this time, Defendants had invested $4.5 million of their own money into the project.

Defendants were introduced to Plaintiff as part of the effect to find a new source of construction financing. Plaintiff was requested to assist Defendants in obtaining new financing. In requesting the assistance of Plaintiff, Defendants agreed to pay Plaintiff's fees and represented that the principals involved in the project, Venturella and Parmee, were placing their creditworthiness behind the new financing.

On or about May 30, 2006, Plaintiff and defendant Standard Property entered into a standard financing agreement, which provided that Plaintiff would obtain the needed financing in an amount up to $20,000,0000. The agreement was addressed to Parmee, on behalf of Standard Property Company, LLC. Defendants paid Plaintiff the $5,000 non-refundable fee through a Bank of America cashiers check dated October 25, 2006, and listed the remitter as Standard Property. Upon obtaining the financing, Plaintiff was to receive four percent (4%) of the total loan amount, which was due and payable upon closing. Following the execution of the agreement in Florida, Plaintiff began soliciting lenders while awaiting the prompt receipt of Defendants' financial documents. These financial documents were not provided to Plaintiff and this action for breach of contract ensued.

Plaintiff claims that jurisdiction is proper in this venue under 28 U.S.C. §1391(a)(2) because this is the judicial district in which a "substantial part of the events giving rise to the claim. . . occurred" and the contract contained a valid forum selection clause. This clause is found at paragraph 9 and states: "The parties hereto agree that this Agreement shall be deemed to have been executed in Allegheny County, PA and subject to the laws thereto." Plaintiff concedes that this language "does not dictate a perfect forum selection clause." Plaintiff's Brief in Opposition (Doc. No. 16) at 18. Plaintiff nevertheless asserts that this paragraph shows the contract was subject to the laws of Pennsylvania and as a consequence Defendants purposely directed their activities toward this forum. Plaintiff further argues that Defendants have sufficient minimum contacts with Pennsylvania, thereby conferring jurisdiction.

Conversely, Defendants argue that this court lacks jurisdiction because the clause at paragraph 9 is not a valid forum-selection clause and as a result there is no consent to Pennsylvania jurisdiction. They further assert that the record lacks sufficient contacts to support either a specific or general jurisdiction analysis.

Personal jurisdiction over nonresident defendants may be exercised pursuant Federal Rule of Civil Procedure 4(e) to the extent permissible under the law of the jurisdiction where the district court is located. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 481 (3d Cir.1993). Pennsylvania's long arm statute is "coextensive with the limits placed on the states by the federal Constitution." Vetrotex v. Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir.1996); See also 42 Pa. C. S. §§ 5301 (general jurisdiction) & 5322 (specific jurisdiction).

Once jurisdiction has been challenged, the plaintiff bears the burden of establishing contacts sufficient to support the exercise of personal jurisdiction. See Marten v. Godwin, 499 F.3d 290, 295-296 (3d Cir. 2007); Provident National Bank v. California Fed. Savings & Loan Assn., 819 F 2d.434, 437 (3d Cir. 1987). Initially, a plaintiff need only make a *prima facie* showing of jurisdiction, and the record is to be read in the light most favorable to the plaintiff. Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002). If the plaintiff makes out a *prima facie* case for exercising personal jurisdiction, the burden shifts to the defendant to "present a compelling case" that the extension of jurisdiction is unconstitutional. Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).

The due process limits on personal jurisdiction are defined by a two prong test. Vetrotex Co., 75 F.3d at 150-51. First, the plaintiff must demonstrate that the defendant has constitutionally sufficient "minimum contacts" with the forum. Burger King, 471 U.S. at 474. In conducting a minimum contacts analysis, the court must examine "the relationship among the forum, the defendant and the litigation," Shaffer v. Heitner, 433 U.S. 186, 204 (1977), and determine whether the defendant "purposefully directed" its activities toward residents of the

forum or the basis of litigation "aris[es] out of or relate[s] to" the defendant's forum contacts. Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 938 F.2d 551, 554 (3d Cir. 1993); Burger King, 471 U.S. at 472.  In other words, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287 (1980) ("[I]t is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").  Second, if the plaintiff demonstrates sufficient "minimum contacts," it must be determined whether the exercise of personal jurisdiction comports with the "traditional notions of fair play and substantial justice." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 25-59 (3d Cir. 1998) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two situations under which a defendant may be subjected to personal jurisdiction: general and specific.  A defendant may be subjected to general jurisdiction when the defendant has maintained continuous and systematic contacts with the forum. Vetrotex, 75 F.3d at 151; Burger King, 471 U.S. at 473. "The threshold for establishing general jurisdiction is very high, and requires a showing of extensive and pervasive facts demonstrating connections with the forum state." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).  A defendant may be subjected to specific jurisdiction "when the cause of action arises from the defendant's forum related activities such that the defendant should reasonably anticipate being haled into court there." Vetrotex, 75 F.3d at 151; 42 Pa. C. S. § 5322. "[S]pecific jurisdiction is established when a non-resident defendant has purposefully directed his activities at a resident of the forum and the injury arises from or is related to those activities." General Electric Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing Burger King, 471 U.S. at 472).

The parties vehemently dispute the import of the clause at paragraph 9 of the agreement.

The issue is whether the language "deemed to have been executed in Allegheny County...and subject to the laws thereto" without further explanation constitutes a valid forum selection clause, thereby subjecting Defendants to Pennsylvania jurisdiction. We hold that it is not.

The clause at paragraph 9 virtually mirrors that of a lease in Tandy Computer Leasing v. DeMarco, 564 A.2d 1299 (Pa. Super.) (1989). In Tandy, a Texas company, Tandy Computer Leasing, entered into an agreement with the defendant DeMarco for the lease of certain computer equipment and accessories. The equipment was shipped from Texas to DeMarco, a Pennsylvania resident, who did not conduct business in Texas. After mailing several payments to Texas, DeMarco returned the equipment and refused to make further payments. Tandy sued DeMarco in Texas for the amount allegedly due under the lease and obtained a default judgment. When Tandy began a collection proceeding on the judgment, DeMarco filed a motion to declare the Texas judgment void because the Texas court did not have jurisdiction over him. Conversely, Tandy argued that Texas had jurisdiction because paragraph 18 in the lease stated: "This lease . . . shall be governed and construed in accordance with Texas law and shall have been *deemed to be made* in Fort Worth, Texas." Id. at 1303 (emphasis added). The Tandy court held the clause was a sufficient choice of law provision, but, without any accompanying language, it lacked the clarity needed to constitute a valid forum selection clause.

In arriving at this holding, the Tandy court relied on the analysis distinguishing between choice of law and forum selection clauses utilized by the Supreme Court in Burger King. There, the Court stated:

> ". . . choice of law analysis which focuses on all elements of the transaction, and not simply on the defendant's conduct - is distinct from minimum contacts jurisdictional analysis - which focuses at the threshold solely on the defendant's purposeful connection to the forum . . . . such a provision standing alone would be insufficient to confer jurisdiction . . ."

Burger King, 471 U.S. at 482. The Burger King Court did indicate that a choice of law provision is relevant to an analysis of whether the defendant has sufficient minimum contacts with the forum to justify the exercise of personal jurisdiction. However, it also emphasized that a

5

provision dictating that the laws of a particular forum are to govern is not the equivalent of consent to personal jurisdiction.

Under the Burger King/Tandy analysis, the "deemed" clause of paragraph 9 is in itself insufficient to constitute a valid forum selection clause; and it follows that Defendants have not thereby consented to personal jurisdiction in Pennsylvania.

Having determined that the Defendants did not contractually consent to personal jurisdiction in Pennsylvania, the question arises as to whether Defendants, through their agent, Key Bay, initiated sufficient minimum contacts with Pennsylvania to warrant the exercise of personal jurisdiction. A review of the record demonstrates that Defendants lack sufficient minimum contacts with Pennsylvania to warrant the exercise of such jurisdiction.

The facts that (1) a non-resident has entered into a contract with a resident of the forum and (2) the contract is "deemed" to have been executed in the forum are not determinative in assessing whether the Defendants have purposefully directed their activities at the forum through their agent, Key Bay. Conducting a due process analysis regarding personal jurisdiction in a contractual setting focuses on the contacts of the defendant in the forum with regard to contract formation. In undertaking this analysis it is important to acknowledge that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction . . . It is these factors, *prior* negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." Hoopeston Canning Co. v Cullen, 318 U.S. 313, 316-317 (1943).

Based on the facts provided in the record as read in the light most favorable to plaintiff, we hold Defendants have insufficient minimum contacts to confer jurisdiction. The record shows Defendants were introduced to Plaintiff in early 2006. An affidavit provided by defendant Parmee states "for the purpose of procuring financing for the Project, Standard Property

contacted a Florida broker, Key Bay Mortgage, LLC ("Key Bay")." Subsequently, Key Bay contacted Plaintiff. Exhibit 4, ¶8. Christopher Kitrinos, president of Key Bay, arranged a telephone call between defendant Parmee and Plaintiff's representative, Reed Kitterman. This telephone call was the only direct contact Defendants had with the forum.

It is well settled that mail and telephone communications from a defendant into a forum are to be taken into account in assessing the minimum contacts needed to support jurisdiction. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 436 (3d. Cir. 1982). But it is equally well settled that "[t]he weight of authority among the courts of appeal is that minimal communication between the defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system." IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d.Cir.1998). In other words, it has been recognized repeatedly that the occasional placing of telephone calls or sending letters into the forum is not sufficient to confer personal jurisdiction over a defendant. See e.g. Mellon Bank, 983 F.2d at 555-556 (holding that a defendant's follow-up telephone calls to its bond company in Pennsylvania did not confer specific jurisdiction); Buck County Playhouse v. Bradshaw, 577 F. Supp. 1203, 1209 (E.D. Pa. 1983) ("the mere placing of telephone calls by defendant into the forum state does not constitute 'purposeful avail[ment].'") .

Plaintiff places much weight on Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001), arguing that the case parallels the facts presented here and this court should reach a similar holding. Plaintiff argues that, like in Remick, jurisdiction over Defendants is proper because Defendants "purposefully directed" their activities at the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. Plaintiff's interpretation of Remick is misplaced.

Although Plaintiff is correct in asserting that the Remick court found that Pennsylvania had jurisdiction over the defendant Manfredy, the rationale behind that holding was based on a greater number of contacts than those presented here. In Remick, the plaintiff's affidavit stated

that Manfredy sought out Remick's legal services by placing a telephone call to his Philadelphia office. This solicitation resulted in an attorney/client fee agreement between Remick and Manfredy, which Remick signed in Philadelphia, and sent to Manfredy to sign out of state. In the agreement it was noted that this formal execution was required by the Pennsylvania Rules of Professional Conduct, indicating that Manfredy was receiving the benefit of Pennsylvania law under the agreement. Remick, 238 F.3d at 256. The court recognized these contact were sufficient to support specific jurisdiction over a subsequent fee dispute.

The distinguishing characteristic between Remick and the instant matter is that in the former there were repeated "informal communications during the course of the contractual relationship between Manfredy and Remick at his Pennsylvania office." Id. at 257. Furthermore, the Virginia case which the Remick court referenced in supporting it determination that Pennsylvania jurisdiction was proper noted that "[the plaintiff] performed all his duties under the contract in Virginia" and that the parties "exchanged numerous telephone calls and written communications." Id. (quoting English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir.1990)). Here, although Plaintiff claims there were similar communications with Defendants, no such evidence is present in the record. Furthermore, unlike Remick, there is no evidence that defendants specifically sought to have Plaintiff perform the duties of the contract in Pennsylvania.

Moreover, Plaintiff's claim that the $5,000 non-refundable fee sent to it provides a parallel to the circumstances in Remick equally is wide of the mark. Although the Remick court concluded that Manfredy had made at least one payment to Remick in Philadelphia, it was not this evidence *alone* that conferred jurisdiction over Manfredy. That payment was considered to be just one of the many contacts Manfredy had with Pennsylvania. As noted above, there were numerous informal communications at Remick's office and the defendant gained the benefit of the actual performance of the contract in Pennsylvania, which had significant implications and benefits for the defendant due to the Rules of Professional Conduct governing the attorney/client

8

relationship.

It is well settled that a single payment alone is not sufficient to subject a defendant to personal jurisdiction. Times Share Vacation Club v. Atlantic Resorts Ltd., 735 F.2d 61, 65 & 66 n. 7 (3d Cir. 1984) (emphasizing that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protection of its laws" and rejecting the contention that payment by check by a defendant could in itself confer jurisdiction) (quoting Hanson, 357 U.S. at 253 and citing Helicopteros Nacionales de Colombia, S.A., 466 U.S. 408, 417 (1984)). Instead, it is but one of evidentiary pieces to be analyzed under a minimum contacts analysis.

Assuming that Key Bay was the agent of Defendants, there is nothing in the record to indicate that Defendants, through their agent, initiated sufficient contacts to sustain Pennsylvania jurisdiction. A realistic approach must be used in determining whether a nonresident contracting party is subject to personal jurisdiction because a "contract is ordinarily but an intermediate step serving to tie up prior business negotiations with the future consequences which themselves are the real object of the business transaction." Burger King, 471 U.S. at 478. Courts must inquire as to whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach. GE v. Deutz AG, 270 F.3d 144, 150 (3d. Cir. 2001). Here, there is virtually no evidence of any contacts by Defendants with this forum. At most, Key Bay arranged a single telephone conversation between Plaintiff and Defendant Parmee. Even when augmented with the choice of law provision and the initial payment of 5,000, the record reflects insufficient contacts by either the Defendants or Key Bay to satisfy the minimum contacts standard for specific jurisdiction. Consequently, Defendants' motion must be granted and the action will be

transferred pursuant to 28 U.S.C. §1406(a) to the Middle District of Florida.[1]


Date: June 16, 2008

                                           David Stewart Cercone
                                           David Stewart Cercone
                                           United States District Judge


cc:     Wayne M. Chiurazzi, Esquire
        Chiurazzi & Mengine, LLC
        429 Forbes Avenue
        Allegheny Building
        Suite 1000
        Pittsburgh, PA 15219

        James P. Golden, Esquire
        Shelley R. Goldner, Esquire
        Hamburg & Golden, PC
        1601 Market Street, Suite 3310
        Philadelphia, PA 19103

---

[1] Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).